# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **FREDERICK GRAY,** )<br>)<br>**Plaintiff,** )<br>v. )<br>)<br>**GREGORY RITTER, and WARDEN** )<br>**MIKE ADDISON,** )<br>)<br>**Defendants.** ) | Case No. CIV-11-1446-F |

## REPORT AND RECOMMENDATION

Plaintiff, Mr. Frederick Gray, a state prisoner appearing pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

Two motions are before the Court. Defendants move that Plaintiff's claims be dismissed or, alternatively, that summary judgment be entered in their favor on such claims. Defs.' Mot. to Dismiss or for Summ. J. ("Defendants' Motion"), Doc. No. 40. Plaintiff, in view of the recent death of Defendant Gregory Ritter, moves that his official successor be substituted for him. Pl.'s Mot. to Substitute, Doc. No. 48. For the following reasons, the undersigned recommends that Defendants' Motion be GRANTED and that Plaintiff's Motion to Substitute be DENIED.

## Background

In this third of three civil rights actions brought by Plaintiff, Plaintiff alleges that on January 19, 2009, Defendant Ritter, while employed at the Joseph Harp Correctional

Center ("JHCC"), viciously struck him on the head and arm, causing physical injury. Compl., Doc. No. 1, at 1-8. Plaintiff further alleges that Defendant Mike Addison, as Warden of JHCC, did not protect Plaintiff from this attack and ignored Plaintiff's subsequent grievance concerning the attack. *Id*. Plaintiff asserts a claim under 42 U.S.C. § 1983 against Defendant Ritter, in his individual capacity, for using excessive force in violation of the Eighth Amendment of the United States Constitution. *Id*. at 1, 6. Plaintiff asserts a § 1983 claim against Defendant Addison, in his official capacity, for: (1) not acting on Plaintiff's grievance, thereby violating the First Amendment of the United States Constitution; and (2) failing to protect Plaintiff from excessive force, thereby violating the Eighth Amendment of the Constitution. *Id*. at 5-6. As relief, Plaintiff seeks money damages. *Id*. at 7.

Plaintiff's two prior civil rights actions included the same excessive force claim, as well as other claims against other defendants. *See* Case Nos. 09-CV-909-F (W.D. Okla. filed Aug. 19, 2009) and 10-CV-1350-F (W.D. Okla. filed Dec. 14, 2010). The first case Plaintiff filed in this Court was dismissed without prejudice under Federal Rule of Civil Procedure 4(m) for failure to serve process. The second case was dismissed without prejudice for failure to exhaust administrative remedies.[1]

On December 6, 2011, approximately thirty days after dismissal of his second case, Plaintiff filed his Complaint in the current case. On May 31, 2013, Defendants filed

---

[1] The Court takes notice of the docket sheets and filings in Case Nos. 09-CV-909-F and 10-CV-1350-F.

their dispositive motion, arguing that Plaintiff's claims were precluded by the doctrine of sovereign immunity and by Plaintiff's failure to exhaust administrative remedies.[2] Plaintiff has responded (Doc. No. 53), and that motion is ready for decision. Further, on August 12, 2013, Plaintiff moved that the late Mr. Ritter's successor at JHCC should be substituted for him as a named defendant in this case, citing Fed. R. Civ. P. 25(d). Defendants have responded (Doc. No. 50), and that motion is ready for decision.

## Analysis

**I. Whether the Court has jurisdiction to hear Plaintiff's official-capacity claims in light of Defendants' assertion of sovereign immunity.**

*A.    Standard of Review*

An assertion of sovereign immunity is a challenge to the Court's subject matter jurisdiction and is properly raised through a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Where, as in this case, a Rule 12(b)(1) motion prompts inquiry into the facts upon which subject matter jurisdiction depends, the Court may consider material outside the pleadings to resolve any disputed jurisdictional issues. *Id.* at 1003 ("When reviewing a factual attack on subject matter jurisdiction . . . [a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."). "In such instances, a court's reference to evidence outside the

---

[2] Defendants also assert they are entitled to qualified immunity. Because of the recommended disposition of Defendants' Motion, the Court need not consider this issue.

3

pleadings does not convert the motion to a [motion for summary judgment]." *Id.*[3]

B. *Eleventh Amendment Sovereign Immunity*

Defendants contend they are entitled to Eleventh Amendment sovereign immunity as to claims brought against them in their official capacities. The undersigned agrees.

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment of the United States Constitution, a federal court may not hear a claim against a U.S. state unless the state consents. U.S. Const. amend XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). When a claim for violation of 42 U.S.C. § 1983 is asserted against a state official in his or her official capacity, and the suit seeks recovery of money damages, the real party in interest is the state itself. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (noting that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest" (internal quotation marks omitted)); *see also Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998). Therefore, official-capacity claims for money damages must be dismissed as outside the federal courts' jurisdiction unless sovereign immunity is waived. *Branson Sch. Dist. RE-82*, 161 F.3d at 632.

---

[3] However, if "resolution of the jurisdictional question is intertwined with the merits of the case," the Court is required to convert the Rule 12(b)(1) motion into a Rule 12(b)(6) motion to dismiss for failure to state a claim or a Rule 56 motion for summary judgment. *Holt*, 46 F.3d at 1003. The key consideration in determining whether the jurisdiction and merits issues are intertwined is "whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000). Here, the jurisdictional question presented – whether Defendants are entitled to sovereign immunity – does not require resolution of any aspect of Plaintiff's substantive claims.

Plaintiff has sued Defendant Addison solely in his official capacity, seeking only money damages. Compl., Doc. No. 1, at 2, 5. This is a suit for recovery of money from the State of Oklahoma; however, Oklahoma has not waived its sovereign immunity defense against § 1983 claims brought in federal district court. *See Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998). Under the Eleventh Amendment, the Court does not have jurisdiction to hear such a claim. Therefore, the undersigned recommends that Plaintiff's claim against Defendant Addison, and any official-capacity claim he has asserted against Defendant Ritter,[4] be dismissed with prejudice.

## II. Whether Plaintiff has exhausted his administrative remedies as required by the Prison Litigation Reform Act.

### A. *Standard of Review*

In deciding the question of whether Plaintiff has exhausted his administrative remedies, the undersigned has considered evidentiary materials submitted by the parties, including: Plaintiff's verified Complaint (Doc. No. 1), the Special Report of Review of Factual Basis of Claims Asserted in Amended Complaint Pursuant to 42 U.S.C. § 1983 ("Spec. Rep.") and attachments thereto (Doc. No. 39), and attachments to Plaintiff's

---

[4] Plaintiff has sued Defendant Ritter in his individual capacity. Compl., Doc. No. 1, at 1 (alleging that Mr. Ritter acted outside his official capacity in assaulting Plaintiff); Pl.'s Mot. to Substitute, Doc. No. 48, at 1 ("Defendant Ritter was a public officer being sued in his individual capacity."). However, to the extent Plaintiff's Complaint could be construed to include an official-capacity claim against Mr. Ritter, the same jurisdictional deficiency identified herein would apply to that claim.

Response to Defendants' Motion (Doc. No. 53). Therefore, Defendants' Motion is treated as a motion for summary judgment on the basis of failure to exhaust. *See* Fed. R. Civ. P. 12(d), 56.

Summary judgment should be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant has satisfied its burden, the Court "tak[es] the facts and the reasonable inferences to be drawn from them in the light most favorable to the nonmoving party." *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1085 (10th Cir. 2008).

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim or affirmative defense. A defendant that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The defendant may do so by citing evidentiary material that represents the testimony and exhibits that would be presented at trial – including "depositions, documents, electronically stored information, affidavits or declarations, or [discovery responses]," Fed. R. Civ. P. 56(c)(1) – and showing that under the undisputed facts the plaintiff cannot prove an essential element of a claim. *Celotex*, 477 U.S. at 323. If the defendant carries this initial burden, the burden shifts to the plaintiff to show, through the same type of Rule 56 evidentiary material, that there is a genuine factual dispute as to the element identified by the defendant. Fed. R.

Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). In other words, to defeat summary judgment, the plaintiff need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the plaintiff's favor. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

A defendant may also seek summary judgment on the basis of an affirmative defense. Because the defendant bears the burden of proof as to its affirmative defense, in order to obtain summary judgment it must show, again through Rule 56 evidentiary material, that the undisputed material facts establish *all* of the elements of the affirmative defense. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more elements of the affirmative defense. *Id*. "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id*.

    B.    *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because

Plaintiff has not presented any evidentiary material that would support an inference that he pursued a grievance relating to the alleged January 19, 2009 incident through the full administrative process, summary judgment should be granted in Defendants' favor.

### 1. The ODOC Offender Grievance Process

The Oklahoma Department of Corrections ("ODOC") has adopted an Offender Grievance Process, OP-090124, by which a prisoner in its custody may make a complaint and obtain a decision on that complaint. *See* Spec. Rep. Ex. 16, Doc. No. 39, Tab 14. The ODOC Grievance Process first requires an inmate to attempt to informally resolve his complaint by (a) speaking to an appropriate staff member within three days of the incident (*id.* at ¶ IV(A)); and (b) if dissatisfied, submitting a written request to staff within seven days of the incident (*id.* at ¶ IV(B)).[5] This first level may only be bypassed if the complaint involves a sensitive topic or an emergency (*id.* at ¶ VIII(A)), discussed more fully below.

The next level of the ODOC Grievance Process is the filing of a grievance. If dissatisfied with the response to a request to staff, the inmate may file a grievance within fifteen days of the incident or the date of the response to the request to staff, whichever is later. *Id.* at ¶ V(A)(1). The grievance is submitted to either the facility's reviewing authority or, if medical in nature, the correctional health services administrator. *Id.* at ¶

---

[5] If there has been no response to a request to staff within thirty calendar days of its submission, the inmate may file a grievance with the facility's reviewing authority on the ground of non-responsiveness. Spec. Rep. Ex. 16, Doc. No. 39-16, Tab 14 at ¶ IV(B)(7).

V(B)(1). This level may only be bypassed if the grievance involves a sensitive topic concerning the reviewing authority or chief medical officer. *Id*. at ¶ VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of an administrative appeal. If dissatisfied with the response to a grievance, the inmate may file an appeal within fifteen days of the date of the response. *Id*. at ¶ VII(A), (B). The appeal is submitted to either the administrative review authority ("ARA") or, if a medical grievance, the chief medical officer. *Id*. at ¶ VII(B). The ruling of the ARA or chief medical officer is final and concludes the administrative remedy procedures available through ODOC. *Id*. at ¶ VII(D).

As mentioned, the ODOC Grievance Process provides that initial levels may be bypassed in the limited circumstances of a sensitive topic or an emergency. *Id.* at ¶ VIII. A "sensitive grievance" is one that alleges misconduct by either (a) the staff member who directly supervises the offender, or (b) the reviewing authority in the facility where the offender is imprisoned. *Id*. at ¶ VII (A)(2). An "emergency grievance" is one that alleges that irreparable harm or personal injury will occur before completion of the standard grievance procedure. *Id.* at ¶ VIII(A)(1). If attempting to bypass one or more levels, the inmate must describe the reason why he or she believes the grievance to be of a sensitive or emergency nature. *Id*. at ¶ VIII(A)(3). If it is determined that the grievance does not involve a sensitive topic or emergency, the grievance is returned to the inmate with the instruction to follow the standard procedure. *Id*. at ¶ VIII(C).

## 2. Steps Taken by Plaintiff

By Affidavit, Plaintiff states that immediately after the January 19, 2009 incident, he filed multiple requests to staff. *See* Affidavit of Frederick Gray ("Gray Affidavit"), Pl.'s Resp. Ex. 12, Doc. No. 53-12, at 3.[6] Plaintiff states that his requests went unanswered; however, as previously explained by the Court, that would not excuse Plaintiff from continuing to pursue his complaint as permitted by the ODOC Grievance Process. *See Gray v. Ritter*, No. 10-CV-1350-F, 2011 WL 3876156, at *2 (W.D. Okla. Aug. 1, 2011) (Bacharach, J.) (stating in Report and Recommendation that "the filing of a request to staff is only one step in a multi-layered process"); *see also Holden v. Dinwiddie*, 343 F.App'x 297, 299 (10th Cir. 2009) (holding that submission of a request to staff, which goes unanswered, does not constitute exhaustion of ODOC Grievance Process).[7]

Plaintiff also attempted to file an emergency/sensitive grievance directly with the reviewing authority, which he submitted on February 10, 2009 to Defendant Addison (the JHCC reviewing authority). *See* Grievance, Pl.'s Resp. Ex. 6, Doc. No. 53-6, at 1-2. This is the only grievance relating to the January 19, 2009 incident that appears in the

---

[6] In his Affidavit, Plaintiff states that additional documents proving he exhausted his administrative remedies were submitted with his Complaint in Case No. 10-CV-1350-F. Attached to that Complaint are, among other things, six requests to staff relating to the January 19, 2009 incident; a February 10, 2009 grievance relating to the incident; and a February 12, 2009 letter returning the February 10, 2009 grievance. The undersigned has reviewed and considered those documents in deciding Defendants' Motion.

[7] Unpublished decisions are cited herein for their persuasive value pursuant to Tenth Circuit Rule 32.1(A).

evidentiary material submitted by the parties. On February 12, 2009, this grievance was returned to Plaintiff unanswered, with the notation that the reviewing authority had determined that the grievance was not of a sensitive or emergency nature. *See* Return of Grievance, Pl. Resp. Ex. 6, Doc. No. 53-6, at 3). Plaintiff was advised that he should follow the standard procedure and had ten days to properly resubmit the grievance. *Id*. In Case No. 10-CV-1350-F, the assigned Magistrate Judge considered these same facts and concluded that, because there was no evidentiary material to support a finding that Mr. Gray followed the admonition to use the standard procedure, he had not exhausted his administrative remedies. *See Gray*, 2011 WL 3876156, at *2.

Plaintiff now states in an Affidavit that he resubmitted the grievance,[8] but he presents no documentation of a second submission. Plaintiff has presented two other documents that include alleged subsequent references by him to his alleged resubmission of the grievance: (a) an Offender Grievance Report Form dated June 1, 2009, addressed to the Director of ODOC (Doc. No. 53-9); and (b) a Misconduct/Grievance Appeal Form, also dated June 1, 2009, addressed to the ARA (Doc. No. 53-10). Defendants have submitted affidavits attesting that no such documents were submitted to ODOC or the ARA. Both documents have been labeled "EXAMPLE" by Plaintiff, contain only his handwriting, and do not show any official stamp or notation of receipt. Thus, it is not

---

[8] *See* Gray Affidavit, Pl.'s Resp. Ex. 12, Doc. No. 53-12, at 3 (stating that when Plaintiff's February 10, 2009 grievance was returned unanswered, he "resubmitted my grievance as instructed").

apparent from the face of these documents when they were created or if they actually were submitted to anyone.

The Court need not decide whether such documents would be admissible at trial or whether they, along with the bare statement in Mr. Gray's Affidavit that he resubmitted the February 10, 2009 grievance, would be sufficient to permit a reasonable inference of a valid filing of a grievance. Even if it is assumed that Plaintiff properly initiated a grievance, there is not sufficient evidentiary material in the record to support a reasonable inference that he ever pursued any such grievance to a final decision by the ARA. The Special Report contains an Affidavit by Mark Knutson, the Manager of the ARA. Spec. Rep. Ex. 17, Doc. No. 39-17, Tab 15, at 2). Mr. Knutson states that he has reviewed the records of Plaintiff's attempts to exhaust his administrative remedies. Mr. Knutson states that Plaintiff has submitted to the ARA two appeals or other documents relating to the claims at issue in this case. *Id.* The first, received by the ARA on April 13, 2010, involves a denied request for a program transfer and only incidentally mentions the January 19, 2009 incident at issue in this case. *Id*. at 15-21. The second is an Inmate/Offender Grievance Report Form, received by the ARA on March 28, 2011, which arguably raises the January 19, 2009 incident. *Id*. at 9-13. On April 6, 2011, Debbie L. Morton of ODOC, on behalf of the Director of ODOC, sent Plaintiff a written notice that the March 28th submission was being returned unanswered, stating it was incorrectly marked as "sensitive/emergency" and involved more than one issue. *Id*. at 8. Plaintiff was informed in the notice that he could resubmit his grievance within ten days.

*Id*.  Plaintiff has presented no evidentiary material indicating he filed another grievance with JHCC or resubmitted the March 28th submission to the ARA.

In Case No. 10-CV-1350-F, the Court dismissed Mr. Gray's action without prejudice for failure to exhaust administrative remedies.  Plaintiff now states in his Affidavit that after the Court's decision he "for good measure tried to [e]xhaust remedies again to the ARA at Okla. DOC headquarters [and] gained no response."  Pl.'s Resp. Ex. 12, Doc. No. 53-12, at 5.  Plaintiff submits no documentation of any filings by him or any response by the ARA.  Defendants' affidavits and documents attest that no additional filings were made by Mr. Gray to JHCC or the ARA.

An inmate who starts the administrative process, but fails to complete it, has not properly exhausted administrative remedies.  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  Plaintiff "may believe that prison officials erred in deciding his issues were not emergencies, but that does not mean that he can simply ignore their determination and opt out of the grievance procedure."  *Brewer v. Mullin*, 130 F.App'x 264, 265-66 (10th Cir. 2005).  Exhaustion of administrative remedies in the ODOC Grievance Process specifically requires an administrative appeal or a valid sensitive topic grievance submitted directly to the ARA.  *See Jackson v. Workman*, 391 F.App'x 724, 725 (10th Cir. 2010) (holding that plaintiff failed to exhaust administrative remedies when he had not filed administrative appeal as required by ODOC Grievance Process).

As detailed above, the parties agree that Plaintiff on several occasions attempted to begin a grievance relating to the alleged January 19, 2009 incident.  Defendants have

13

submitted affidavits and documents attesting that Plaintiff never properly initiated and followed through on an administrative appeal to the ARA or a sensitive topic grievance submitted directly to the ARA. Although Plaintiff attempts to explain away that evidence, whether Plaintiff's affidavit is sufficient to create a genuine fact issue "must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks omitted); *see also United States v. Boomershine*, No. 91-7107, 1992 WL 164280, at *2 (10th Cir. July 13, 1992). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court finds that Plaintiff has not presented sufficient evidentiary material to support an inference that he did in fact pursue a grievance relating to the alleged January 19, 2009 incident through all steps of the administrative process. Under this record, Defendants are entitled to judgment as a matter of law.

### III.  Whether Plaintiff's Motion to Substitute Party should be granted.

Citing Fed. R. Civ. P. 25(d), Plaintiff requests that, in view of Defendant Ritter's death, his official successor at the prison be substituted for him as a defendant in this case. Rule 25(d) pertains to replacement of a public officer, sued in an official capacity, when such a party dies, resigns, or otherwise ceases to hold office while the action is pending. Because Defendant Ritter was sued in an individual capacity, and was not a

"public officer" within the meaning of Rule 25(d), substitution of his successor at the prison is not appropriate. Thus, the undersigned recommends that Plaintiff's Motion to Substitute be denied.

Given the unusual circumstance of a deceased defendant and the liberal treatment to be afforded Plaintiff in light of his *pro se* status, the Court notes several additional matters pertinent to substitution. First, under Oklahoma law, Plaintiff's claim against Defendant Ritter is not extinguished by his death. *See* Okla. Stat. tit. 12, § 1052; *Hopkins v. Okla. Pub. Emps. Ret. Sys.*, 150 F.3d 1155, 1159 (10th Cir. 1998). Because Plaintiff asserted an individual-capacity claim against Defendant Ritter, the governing rule for substitution involving such a claim is Fed. R. Civ. P. 25(a) and the proper substitute would be the personal representative of Mr. Ritter's estate *if* an estate has been established and a representative appointed. Second, the Court treats the statement noting death filed by Defendant Addison (Doc. No. 45) and the motion to substitute filed by Plaintiff as nullities because, contrary to Rule 25(a)(3), neither was served on Mr. Ritter's successor or representative. *See Grandbouche v. Lovell*, 913 F.2d 835, 837 (10th Cir. 1990); *Giles v. Campbell*, 698 F.3d 153, 159 (3d Cir. 2012) (holding that statement noting death and motion to substitute that were filed without serving decedent's estate were "nullities"); *Atkins v. City of Chicago*, 547 F.3d 869, 874 (7th Cir. 2008) (same). In these circumstances, further action by the Court on the question of substitution is not necessary before entering summary judgment against Plaintiff. *See Roberts v. Thompson*, No. 93-1409, 1994 WL 242457 (10th Cir. June 6, 1994) (issuing judgment on appeal

after death of defendant); *Slade ex rel. Estate of Slade v. U.S. Postal Serv.*, 952 F.2d 357, 359-60 (10th Cir. 1991) (affirming summary judgment granted by district court after death of defendant).

RECOMMENDATION

For the foregoing reasons, the undersigned recommends that: (1) Defendants' Motion for Summary Judgment (Doc. No. 40) be GRANTED; and (2) Plaintiff's Motion to Substitute (Doc. No. 48) be DENIED.

NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by November 6, 2013, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation would waive the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on this 16th day of October, 2013.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE